UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:13-CV-74-BR

| | |
|---|---|
| HENRY C. PARKS, | ) |
| | ) |
|       Plaintiff, | ) |
| v. | ) |
| | )    ORDER |
| NORTH CAROLINA DEPARTMENT | ) |
| OF PUBLIC SAFETY, *et al.*, | ) |
| | ) |
|       Defendants. | ) |

This matter is before the court on the following motions: (1) the 8 August 2013 motion to dismiss (DE # 12) filed by defendants Mark Crabtree ("Crabtree"), Frank Marczyk ("Marczyk"), and Wren Rivenbark ("Rivenbark"); and (2) the 8 August 2013 motion to dismiss (DE # 13) filed by defendants North Carolina Department of Public Safety and North Carolina Department of Corrections. For convenience, the moving defendants may be referred to collectively as "defendants." The matters are now ripe for disposition.

## I. BACKGROUND

Plaintiff Henry C. Parks ("plaintiff"), an African-American male, began his employment with the North Carolina Department of Corrections ("NCDOC"), which is a subdivision of the North Carolina Department of Public Safety ("NCDPS"), on or about 1 October 1994 as a program assistant. (Compl., DE # 1, ¶¶ 3, 16-17.) In 1995, plaintiff was promoted to the position of counselor. (Id. ¶ 17.) In 1998, he was again promoted to the position of substance abuse counselor. (Id.) According to plaintiff, between the years 2000 and 2008, he applied for several promotions, but he did not receive them due to "unjustified disciplinary warnings" which disqualified him from consideration for promotion. (Id. ¶¶ 18-19; see also id. ¶ 20.) On 1 September 2008, plaintiff was promoted to the position of Alcohol and Chemical Dependency

Program Administrator at the Wayne Correctional Facility, where he supervised five counselors. (Id. ¶ 22.)

In March 2010, plaintiff alleges that he verbally informed Marczyk, his direct supervisor, of concerns related to a potentially inappropriate relationship between a subordinate counselor and an inmate. (Id. ¶¶ 24-25, 28.) Plaintiff requested to have the inmate transferred to another correctional center. (Id. ¶ 29.) The inmate was briefly transferred to a different facility, but he returned to the Wayne Correctional Facility on 1 July 2010. (Id. ¶¶ 30-31.) Starting in July 2010 and continuing until October 2010, plaintiff again complained to Marczyk about an inappropriate relationship between the inmate and the same subordinate counselor. (Id. ¶¶ 34-37, 43-48.)

On 21 October 2010, plaintiff had a conversation with Kevin Barnes ("Barnes"), the Assistant Superintendent for Custody and Operations at the prison. (Id. ¶¶ 1, 24, 49-50.) Barnes asked plaintiff why he looked troubled. (Id. ¶ 51.) Without mentioning names, plaintiff informed Barnes that he was concerned about "a 'custody' person's relationship with an inmate." (Id. ¶ 52.) Barnes then mentioned the names of an inmate and a counselor and asked plaintiff if he was talking about those specific individuals. (Id. ¶ 53.) Plaintiff did not respond, but Barnes told plaintiff that he had received information from other staff members pertaining to the relationship between the inmate and the counselor at issue and that plaintiff "had merely confirmed his suspicion." (Id.)

On 1 November 2010, plaintiff received written notice that he was being investigated for breaking the chain of command for allegedly reporting the undue familiarity between the inmate and the counselor to Barnes without first informing his supervisor, Marczyk. (Id. ¶ 55.) Plaintiff

2

denies breaking the chain of command and maintains that he properly reported the relationship to Marczyk in person, by email, and by telephone. (Id. ¶¶ 62, 67.) On 18 May 2011, District Manager Bobby Montague, Assistant District Manager Crabtree, and Clinical Director Rivenbark issued plaintiff a written warning for breaking the chain of command. (Id. ¶¶ 1, 58.) On the same date, plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). (Id. ¶ 59.)

Beginning in April 2011 and continuing until February 2012, plaintiff applied for several promotions, but he failed to receive any of the desired positions. (Id. ¶¶ 60-63.) Plaintiff maintains that as the result of the improper written warning that he received in May 2011, he was automatically suspended for a period of eighteen months and therefore was ineligible for receiving promotions and other employment advancements. (Id.) He generally alleges that all of the positions he applied for between April 2011 and February 2012 were filled by younger, white, and less qualified applicants. (Id. ¶ 68.)

Plaintiff supplemented his EEOC complaint on 28 March 2012 by reporting the continued discriminatory and retaliatory treatment that he received. (Id. ¶ 64.) In April and July 2012, he alleges that he was demoted and transferred in retaliation for filing his EEOC complaint. (Id. ¶¶ 65-66.) On 21 August 2012, the written warning that plaintiff received on 18 May 2011 was rescinded. (Id. ¶ 69.) However, plaintiff remains in his demoted position. (Id.)

This case was commenced by plaintiff, proceeding with counsel, on 1 February 2013. In the complaint, plaintiff asserts race discrimination and retaliation claims against defendants under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and North Carolina state law claims for tortious interference with contractual or prospective business

3

relations, negligence, and negligent infliction of emotional distress. As the result of defendants' conduct, plaintiff alleges that he "has lost income, future income including but not limited to retirement benefits, has been unable to receive promotions or other employment advancements, and has been demoted. Plaintiff has further suffered future pecuniary losses, damage to his professional reputation, emotional pain, suffering, inconvenience, mental anguish, and other non-pecuniary losses." (Id. ¶ 70.)

On 8 August 2013, Crabtree, Marczyk, and Rivenbark filed a motion to dismiss. (DE # 12.) The NCDPS and the NCDOC also filed a motion to dismiss on the same date. (DE # 13.) Plaintiff did not file a response to either motion.

## II. DISCUSSION

A. Standard of Review

Defendants have moved to dismiss several of plaintiff's claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on sovereign immunity grounds and for failure to state a claim upon which relief may be granted. Pursuant to Federal Rule of Civil Procedure 12(b)(1), a claim may be dismissed for lack of subject matter jurisdiction. The plaintiff has the burden of proving that subject matter jurisdiction exists. Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), "the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Id. The district court should grant the Rule 12(b)(1) motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id.

4

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to challenge the sufficiency of the plaintiff's allegations. A motion to dismiss under this rule determines only whether a claim is stated on the facts alleged; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). In order to survive a motion to dismiss, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff[,]" but does not consider "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement . . . ." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). Nor does the court accept as true "'unwarranted inferences, unreasonable conclusions, or arguments.'" Id. (quoting Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 615 n.26 (4th Cir. 2009)).

As previously mentioned, plaintiff did not respond to the motions to dismiss that are presently before the court. Although Federal Rule of Civil Procedure 41 authorizes a court to dismiss an action for failure of the plaintiff to respond to a motion to dismiss, most courts do "not apply such an unforgiving and relentless sanction simply because a motion to dismiss goes unopposed." Mitchell v. First Cent. Bank, Inc., Civil Action No. 2:08CV6, 2008 WL 4145517, at *2 (N.D. W. Va. Sept. 8, 2008); see also Pomerleau v. W. Springfield Pub. Schs., 362 F.3d 143, 145 n.1 (1st Cir. 2004) ("While a district court retains discretion to dismiss a plaintiff's action under Fed. R. Civ. P. 41(b) for failure to prosecute, lack of response to a motion to

5

dismiss does not, without more, justify this severe sanction."). The court declines to impose such a sanction in this case and will consider the motions on their merits.

B.      Title VII Claims Against Crabtree, Marczyk, and Rivenbark

Crabtree, Marczyk, and Rivenbark argue that the claims that have been brought against them pursuant to Title VII should be dismissed because there is no individual liability under that statute. Although it is not completely clear from the complaint, plaintiff does appear to be asserting his claims against these defendants in both their individual and official capacities. (See Compl., DE # 1, at 15 ¶ 7 (Prayer for Relief).) Thus, the court will assume that plaintiff is suing them in both capacities. The court agrees that plaintiff cannot maintain any of his Title VII claims against Crabtree, Marczyk, or Rivenbark in their individual capacities. See Jones v. Sternheimer, 387 F. App'x 366, 368 (4th Cir. 2010) (per curiam) (unpublished); Lissau v. S. Food Serv., Inc., 159 F.3d 177, 180-81 (4th Cir. 1998); Ward v. Coastal Carolina Health Care, P.A., 597 F. Supp. 2d 567, 570 (E.D.N.C. 2009) ("[I]ndividual employees . . . are not liable in their individual capacities for Title VII violations because such individuals are not 'employers' under Title VII."). Therefore, the court will dismiss the Title VII claims asserted against these defendants in their individual capacities.

Furthermore, a plaintiff may not bring a Title VII claim against an individual in his official capacity if the claim is duplicative of the claim against the public employer, as it is here. See, e.g., Smith v. Amedisys Inc., 298 F.3d 434, 449 (5th Cir. 2002) ("[A] plaintiff is not entitled to maintain a Title VII action against both an employer and its agent in an official capacity."); Hill v. Robeson Cnty., N.C., 733 F. Supp. 2d 676, 682 (E.D.N.C. 2010) ("A claim against a government employee in his official capacity is tantamount to a claim against the government

6

entity for which he works and should be dismissed as duplicative."); Emmons v. City Univ. of N.Y., 715 F. Supp. 2d 394, 410-11 (E.D.N.Y. 2010); Cooke-Seals v. Dist. of Columbia, 973 F. Supp. 184, 187 (D.D.C. 1997). Accordingly, the court will also dismiss plaintiff's Title VII claims against Crabtree, Marczyk, and Rivenbark in their official capacities.

C.   State Law Claims

In his complaint, plaintiff has asserted claims against defendants under North Carolina law for tortious interference with contractual or prospective business relations, negligence, and negligent infliction of emotional distress. (Compl., DE # 1, ¶¶ 77-99.) The NCDPS and the NCDOC argue that all of plaintiff's state law claims against them are barred by the doctrine of sovereign immunity.[1] For the same reason, Crabtree, Marczyk, and Rivenbark also argue that all of plaintiff's state law claims against them should be dismissed to the extent that they have been sued in their official capacities.

Under the doctrine of sovereign immunity,[2]

> a state may not be sued in its own courts or elsewhere unless by statute it has consented to be sued or has otherwise waived its immunity from suit.
>
> By application of this principle, a subordinate division of the state, or

---

[1] In contrast, with respect to plaintiff's Title VII claims against the NCDPS and the NCDOC, the law is clear that Title VII is a valid abrogation of sovereign immunity for a private enforcement action against a state agency as an employer. See, e.g., Fitzpatrick v. Bitzer, 427 U.S. 445, 456 (1976); Crumpacker v. Kan. Dep't of Human Res., 338 F.3d 1163, 1169-72 (10th Cir. 2003); Jones v. Wis. Div. of Unemployment Ins., No. 09-cv-149-bbc, 2009 WL 814297, at *2 (W.D. Wis. Mar. 25, 2009) ("Petitioner may seek money damages against a state agency under Title VII because Congress has abrogated state sovereign immunity with respect to Title VII.").

[2] Defendants have also argued that they are entitled to Eleventh Amendment immunity. (See Mem. Supp. Mot. Dismiss, DE # 14, at 6-8; id., DE # 15, at 4-6.) The court recognizes that there is a distinction between general principles of sovereign immunity and those embodied in the Eleventh Amendment. See Alden v. Maine, 527 U.S. 706, 713 (1999) ("[T]he sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment."); Stewart v. North Carolina, 393 F.3d 484, 488 (4th Cir. 2005). However, that distinction is not material to the analysis at issue, and the court notes that the terms "sovereign immunity" and "Eleventh Amendment immunity" are often used interchangeably to mean the same thing. Nevertheless, for the sake of consistency, the court will use the term "sovereign immunity" throughout this opinion.

7

agency exercising statutory governmental functions . . . may be sued only when and as authorized by statute.

N.C. Ins. Guar. Ass'n v. Bd. of Trs. of Guilford Tech. Cmty. Coll., 691 S.E.2d 694, 697 (N.C. 2010) (alteration in original) (quoting Smith v. Hefner, 68 S.E.2d 783, 787 (N.C. 1952)); see also, e.g., Guthrie v. N.C. State Ports Auth., 299 S.E.2d 618, 625 (N.C. 1983) ("It has long been established that an action cannot be maintained against the State of North Carolina or an agency thereof unless it consents to be sued or upon its waiver of immunity, and that this immunity is absolute and unqualified." (emphasis in original)); Wood v. N.C. State Univ., 556 S.E.2d 38, 40 (N.C. Ct. App. 2001) ("Sovereign immunity protects the State and its agencies from suit absent waiver or consent."), appeal dismissed and disc. review denied, 561 S.E.2d 887 (N.C. 2002). Furthermore, "when an action is brought against individual state officers or employees in their official capacities, the action is one against the State for the purposes of applying the doctrine of sovereign immunity." Harwood v. Johnson, 374 S.E.2d 401, 404 (N.C. Ct. App. 1988), aff'd in part and rev'd in part on other grounds, 388 S.E.2d 439 (N.C. 1990); see also Patrick v. Wake Cnty. Dep't of Human Servs., 655 S.E.2d 920, 924 (N.C. Ct. App. 2008).

In this case, both the NCDPS and the NCDOC qualify as state agencies to which the doctrine of sovereign immunity applies.[3] See, e.g., N.C. Gen. Stat. § 143B-601 (2014); DeMurry v. N.C. Dep't of Corrections, 673 S.E.2d 374, 381 (N.C. Ct. App. 2009) ("'The Department of Correction is a state agency created for the performance of essentially governmental functions, and a suit against this department is a suit against the State.'" (quoting

---

[3] In the complaint, plaintiff alleges that the NCDOC is a subdivision of the NCDPS. (Compl., DE # 1, ¶ 3.) However, defendants maintain that the NCDPS was "formerly" the NCDOC. (Mem. Supp. Mot. Dismiss, DE # 14, at 2; id., DE # 15, at 2, 4.) Regardless of how the relationship between the two entities is described during the period of time relevant to this action, the court finds that both the NCDOC and the NCDPS are or were agencies of the state.

8

Harwood, 388 S.E.2d at 443)). It is also clear that Crabtree, Marczyk, and Rivenbark are employees of the state. Thus, absent waiver or consent, plaintiff's state law claims against the NCDPS, the NCDOC, and against Crabtree, Marczyk, and Rivenbark in their official capacities are barred by the doctrine of sovereign immunity.

The North Carolina Tort Claims Act, N.C. Gen. Stat. § 143-291 *et seq*., "effects a limited waiver of State sovereign immunity for negligent acts committed by state employees in their official capacities."[4] Alston v. N.C. A&T State Univ., 304 F. Supp. 2d 774, 783 (M.D.N.C. 2004); see also N.C. Gen. Stat. § 143-291(a); White v. Trew, 736 S.E.2d 166, 168 (N.C. 2013); Teachy v. Coble Dairies, Inc., 293 S.E.2d 182, 185 (N.C. 1982). However, the Tort Claims Act does not waive the sovereign immunity of the state for intentional torts. Kawai Am. Corp. v. Univ. of N.C. at Chapel Hill, 567 S.E.2d 215, 218 (N.C. Ct. App. 2002). In other words, "[i]ntentional torts committed by agents and officers of the State are not compensable under the Tort Claims Act." Id. at 217 (citation omitted); see also White, 736 S.E.2d at 168. In this case, plaintiff's claim for tortious interference with contractual or prospective business relations is an intentional tort. See, e.g., Blue Ridge Pub. Safety, Inc. v. Ashe, 712 F. Supp. 2d 440, 447-48 (W.D.N.C. 2010) (under North Carolina law, tortious interference with contract and tortious interference with prospective economic advantage are intentional torts); Beck v. City of Durham, 573 S.E.2d 183, 190 (N.C. Ct. App. 2002) (same). This claim is therefore barred by sovereign immunity as to the NCDPS and the NCDOC, and as to Crabtree, Marczyk, and Rivenbark in their official capacities.

The court next addresses plaintiff's claims for negligence and negligent infliction of

---

[4] North Carolina courts strictly construe statutes authorizing waiver of governmental immunity. See, e.g., Guthrie, 299 S.E.2d at 627.

9

emotional distress.  The Tort Claims Act mandates that plaintiffs who wish to sue the state for negligent tortious acts must bring their claims before the North Carolina Industrial Commission, not a state or federal court.  See, e.g., N.C. Gen. Stat. § 143-291(a); Stewart v. North Carolina, 393 F.3d 484, 490 n.3 (4th Cir. 2005); Hooper v. North Carolina, 379 F. Supp. 2d 804, 812 (M.D.N.C. 2005) ("[T]he State of North Carolina has not waived its sovereign immunity regarding any tort claims other than claims of negligence brought before the Industrial Commission under Article 31 of Chapter 143 of the Tort Claims Act."); Alston, 304 F. Supp. 2d at 783; Guthrie, 299 S.E.2d at 626; Teachy, 293 S.E.2d at 185; Kawai, 567 S.E.2d at 217. Because the state has not consented to be sued in federal court for such claims, and because a suit against state agencies and public employees in their official capacities is equivalent to a suit against the state, plaintiff's negligence-based claims must be dismissed as to the NCDPS and the NCDOC, and as to Crabtree, Marczyk, and Rivenbark in their official capacities.

The court notes that Crabtree, Marczyk, and Rivenbark have not argued that the state law claims brought against them in their individual capacities should be dismissed.  As a result, the court has not considered this issue.

### III.  CONCLUSION

For the foregoing reasons, the motion to dismiss (DE # 12) filed by Crabtree, Marczyk, and Rivenbark is GRANTED.  Plaintiff's Title VII claims against these defendants in both their individual and official capacities are DISMISSED WITH PREJUDICE.  All of plaintiff's North Carolina state law claims brought against these defendants in their official capacities are also DISMISSED WITH PREJUDICE.  Plaintiff may proceed with his state law claims against Crabtree, Marczyk, and Rivenbark in their individual capacities.

10

The motion to dismiss (DE # 13) filed by the NCDPS and the NCDOC is also GRANTED. All of plaintiff's state law claims against the NCDPS and the NCDOC are DISMISSED WITH PREJUDICE. Plaintiff's Title VII claims against these defendants remain.

This 6 January 2014.

                                        W. Earl Britt
                                        Senior U.S. District Judge